A93A1633. MICHAELS et al. v. GORDON.
(439 SE2d 722)

COOPER, Judge.

Appellant-plaintiffs Brandon and Terri Michaels are the parents of two minor children. As part of an investigation of a report of possible child molestation, the Gwinnett County Department of Family & Children Services (DFACS) placed the children in the temporary custody of a foster family and referred one child, appellant-plaintiff C. J. M., to appellee-defendant, Dr. Mary Gordon, a licensed psychologist, for evaluation. After two interviews, including a psychological evaluation, Dr. Gordon formed the professional opinion that C. J. M. had been sexually molested. Based in part upon statements made by the child, Dr. Gordon further believed that the perpetrator of the suspected molestation was C. J. M.'s father. At a hearing before the juvenile court on a petition of deprivation, Dr. Gordon testified as to her professional opinion that C. J. M. had been sexually molested. The juvenile court, however, determined that the evidence adduced did not support a finding that C. J. M. had been abused by his father or that he was at risk at home. Therefore, custody was returned to the parents. Appellants subsequently initiated the instant action for med-

ical malpractice on behalf of themselves and the two minors. Their complaint is supported by the expert testimony of Dr. Larson, a Florida psychologist, who was of the opinion that the manner and method of Dr. Gordon's interviews and evaluations fell below the standards of professional conduct, leading to an erroneous opinion that C. J. M. had been molested by his father. After extensive discovery, Dr. Gordon moved for summary judgment, based in part upon a claim of immunity from liability as provided by the child abuse reporting statute, OCGA § 19-7-5. This motion was granted by the trial court and appellants appeal.

1. Appellants contend that the immunity provisions of OCGA § 19-7-5 do not apply to Dr. Gordon because she was not a "mandatory reporter" under that statute. In this regard, they argue that since suspected child abuse *already* had been reported to DFACS before it referred C. J. M. to Dr. Gordon for evaluation, Dr. Gordon cannot be a reporter.

Certain specified persons, including licensed psychologists, who have reasonable cause to believe that a child has been abused, shall report that abuse to a child welfare agency or to the appropriate police authority. OCGA §§ 19-7-5 (c) (1) (D); 19-7-5 (e). "Child abuse" within the meaning of this Code section includes sexual abuse of a child. OCGA § 19-7-5 (b) (3) (C). OCGA § 19-7-5 (f) provides: "Any person . . . participating in the making of a report . . . or participating in any judicial proceeding or any other proceeding resulting [from such a report of suspected child abuse] shall in so doing be immune from any civil or criminal liability that might otherwise be incurred or imposed, provided such participation pursuant to this Code section . . . is made in good faith. *Any person making a report, whether required by this Code section or not, shall be immune from liability as provided in this subsection.*" (Emphasis supplied.)

The statutory grant of immunity is not absolute, for it is conditioned on the good faith of the participant. Nevertheless, this qualified immunity protects any person *participating* in the making of a report to a child welfare agency and *also* any person participating in judicial or other proceedings arising as a result of a report of suspected child abuse. The statutory language "participating in the making of a report" presupposes the involvement of more than one person and so includes acts beyond the *initial* communication of child abuse suspected because of a visual inspection of the child, or observed behavior, or the child's statement. Appellants' contention that Dr. Gordon is not afforded immunity because she did not make the initial report of suspected child abuse is without merit. The grant of qualified immunity covers every person who, in good faith, participates *over time* in the making of a report to a child welfare agency.

The acts which constitute "making" the report include the good

faith clinical investigation of the bases for suspecting child abuse as well as any participation in subsequent judicial proceedings. The qualified immunity from "any civil or criminal liability that might otherwise be incurred" provided by OCGA § 19-7-5 (f) includes immunity from liability premised upon alleged medical malpractice by a licensed psychologist arising out of a psychological evaluation of a child performed as part of the investigation of suspected child abuse made by a child welfare agency. Other jurisdictions, interpreting substantially identical statutory grants of qualified immunity to reporters of suspected child abuse, also have concluded that alleged acts of medical malpractice resulting in an erroneous medical opinion of child abuse are afforded qualified immunity from any civil liability. See *Maples v. Siddiqui*, 450 NW2d 529 (Iowa 1990) (immunity afforded to physician who, after allegedly improper diagnosis of malnutrition, recommended child be placed in temporary foster care); *Awkerman v. Tri-County Orthopedic Group, P.C.*, 373 NW2d 204 (Mich. 1985) (immunity afforded to physician who, after erroneously ruling out diagnosis of "brittle bone" disease, reported suspected abuse of child who had sustained five bone fractures in four-month period). Compare *Austin v. State*, 179 Ga. App. 235 (345 SE2d 688) (1986) (OCGA § 19-7-5 (f) immunity is not available to the actual molester who turned himself in). Although we disagree with appellants that Dr. Gordon would not be a mandatory reporter of any child abuse she reasonably suspected after conducting her independent evaluation of a child referred to her by DFACS, since OCGA § 19-7-5 (f) affords immunity to all who in good faith participate in the making of a report of suspected child abuse, "whether required by [OCGA § 19-7-5] or not," appellants' argument that Dr. Gordon is not a *mandatory* reporter is irrelevant. It is undisputed that C. J. M. was referred to Dr. Gordon by DFACS as part of an investigation of reported child abuse. The trial court correctly determined that OCGA § 19-7-5 (f) good faith immunity applies to any alleged medical malpractice committed by the psychologist arising out of that investigation of suspected child abuse under OCGA § 19-7-5.

2. Asserting that Dr. Gordon's good faith remains a question of fact, appellants contend that the grant of summary judgment was erroneous. In support of her motion for summary judgment, Dr. Gordon submitted her affidavit detailing the psychological tests she employed to evaluate C. J. M. The evidence she relied upon in formulating her professional opinion that the boy had been sexually molested included statements about C. J. M.'s unusual behavior given by the foster parents, his behavior as observed in the interviews, as well as statements by the boy himself. Dr. Gordon swore that her interviews and evaluations of C. J. M. were conducted honestly and in good faith. In opposition to this evidence, appellants relied upon the affida-

vit of Dr. Larson, wherein he opined that Dr. Gordon failed to act in good faith. This opinion was based on the same factors that led him to conclude that Dr. Gordon's evaluation of C. J. M. fell below the standard of care generally, namely, her failure to acquire an adequate history, her reliance upon hearsay, her misuse of psychological testing, her use of outdated materials, and her failure to maintain her notes and records after she testified at the deprivation hearing.

(a) Pretermitting whether a mandatory reporter of suspected child abuse, subject to criminal sanctions for *failing* to report, is entitled to an evidentiary presumption of good faith for steps taken in compliance with the child abuse reporting statute, (but see *Ga. Cas. Co. v. McRitchie*, 45 Ga. App. 697 (3) (166 SE 49) (1932)), we note that Dr. Larson's affidavit is not itself competent evidence of the *lack* of good faith on the part of Dr. Gordon. "While opinion evidence of state of mind or mental condition may be admissible, [cit.], usually opinion evidence as to one's motives or intent is not. [Cits.] 'Intent is something which exists in the human mind and can be manifested only by external acts from which an inference of intent will arise.' [Cit.] . . . Since . . . the opinion testimony would be no stronger or more persuasive than the facts on which the opinions were based we . . . consider them [only]." *Cohen v. Hartlage*, 179 Ga. App. 847, 849-850 (348 SE2d 331) (1986).

(b) " '[B]ad faith' [is] '[t]he opposite of "good faith[,"] generally implying or involving actual or constructive fraud[;] or a design to mislead or deceive another[;] or a neglect or refusal to fulfill some duty . . . , not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.' " *Edwards-Warren Tire Co. v. Coble*, 102 Ga. App. 106, 115 (2) (115 SE2d 852) (1960). " 'Bad faith' is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will. [Cit.]" *Vickers v. Motte*, 109 Ga. App. 615, 619-620 (137 SE2d 77) (1964).

Appellants' evidence of alleged unprofessional acts and omissions committed by Dr. Gordon would authorize a finding that she was negligent or exercised bad judgment in formulating her professional opinion that the child had been sexually abused. However, this proof of mere negligence or bad judgment is not proof that Dr. Gordon refused to fulfill her professional duties, out of some interested or sinister motive, or that she consciously acted for some dishonest or improper purpose. There being no competent evidence that Dr. Gordon acted in bad faith, the trial court correctly granted appellee's motion for summary judgment based upon the statutory grant of good faith immunity.

3. Remaining contentions have been considered and are found to

474

be moot.

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993 — 

*Peevy & Lancaster, Donn M. Peevy,* for appellants.
*Freeman & Hawkins, T. Ryan Mock, Jr., Cullen C. Wilkerson,* for appellee.